IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

MARK H. PRICE,

       Plaintiff,

 v.

DON STRAHOTA, DAN WINKLESKI,
LARRY FUCHS, CARL HENRICHSEN,
CORY M. RAHLF, and ERIC A. WEIGEL,

       Defendants.

OPINION and ORDER

19-cv-61-jdp

---

  Plaintiff Mark H. Price, appearing pro se, is a prisoner at Stanley Correctional Institution. Price brings this lawsuit under 42 U.S.C. § 1983, alleging that when he was incarcerated at New Lisbon Correctional Institution, defendant prison officials investigated him and convicted him of a disciplinary infraction without him receiving proper due process. He qualified for *in forma pauperis* status and followed by paying the entire $350 filing fee.

  The next step is for me to screen Price's complaint and dismiss any portion that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law cannot be sued for money damages. 28 U.S.C. §§ 1915 and 1915A. In doing so, I must read his pro se complaint generously, *see Haines v. Kerner*, 404 U.S. 519, 521 (1972) (per curiam), and accept his allegations as true, *see Bonte v. U.S Bank, N.A.*, 624 F.3d 461, 463 (7th Cir. 2010).

  I conclude that Price's current allegations do not state any claims for relief. I conclude that at least some of his allegations are too vague to satisfy Federal Rule of Civil Procedure 8. I will dismiss his complaint and give him a chance to file an amended complaint.

FACTUAL ALLEGATIONS

During the events central to this case, plaintiff Mark H. Price was incarcerated at New Lisbon Correctional Institution. On February 27, 2017, Price was sent to temporary lockup by defendant Captain Corey Rahlf, pending an investigation into Price possessing contraband drugs. Defendant Correctional Officer Eric Weigel said that he saw "a white powder substance" fall out of a pair of Price's underwear and also saw it on a drinking cup of Price's. Dkt. 1, at 2. Weigel also found a "discolored toothpaste tube with a liquid inside." *Id.* Weigel and defendant Carl Henrichsen, the Restrictive Housing Unit manager, tested the powder and liquid using a "Nark II" field testing kit. The powder tested positive for oxycodone and the liquid tested positive for methamphetamine. These defendants were not well trained in use of the Nark II kit, and the Nark II kit is notoriously unreliable and known for producing false positives. Weigel wrote Price a conduct report for possessing drugs. The contraband substances were turned over to local police for a criminal investigation.

Henrichsen ordered Price placed in an observation cell in the Restrictive Housing Unit. In that cell, the water was turned off, the room was constantly lit, Price was allowed no properly, including hygiene items, he was closely monitored, and his bodily fluids were collected and inspected. Price stayed in that cell for about a day. Price believes that Henrichsen placed him in the cell "to harass and intimidate" him. *Id.* at 3.

Price maintained that the items were soap, not drugs. He waived the 21-day time limit for holding his disciplinary hearing in the hope that a second, "confirmation" drug test would prove that the substances were not drugs. Price wrote to defendant Security Director Larry Fuchs, asking to postpone the hearing to wait for the confirmation test, but Fuchs denied those requests despite knowing that the Nark II kit produced unreliable results.

2

Price's disciplinary hearing was held on March 17, 2017. Defendant Rahlf conducted the hearing over Price's objection that the confirmation test results had not yet come back. Price says that he could not respond to various questions posed by Rahlf because Price had been given his *Miranda* warnings a week earlier by police officers when they interviewed him. Rahlf "became enraged" and had Price removed from the hearing. Rahlf found Price guilty of possessing drugs and sentenced him to 300 days of solitary confinement, despite knowing that the Nark II kit produced unreliable results. Price was sent to Columbia Correctional Institution (CCI) to serve his term of solitary confinement. This also eventually led to his placement back into maximum-security prison.

Price appealed the decision to defendant Don Strahota, then the warden, but Strahota denied it. Strahota was also aware that the Nark II kit produced unreliable results.

In July 2017, the state crime lab reported that the substances from Price's cell tested negative for contraband drugs. Price's disciplinary conviction was vacated and he was transferred to a medium-security prison. He ended up serving 139 days in solitary confinement and 52 days in a maximum-security cell with what he calls abhorrent conditions. In particular, I take Price to be saying that for at least part of his time at CCI, he had a cellmate with terrible hygiene who was "a health hazard," and Price was forced to wear clothes that smelled like urine. *Id.* at 7.

ANALYSIS

I take Price to be contending that his constitutional rights were violated in several ways in conjunction with the investigation and conviction for possession of drugs. But his current allegations do not state any claims for relief.

Price says that he was given a conduct report on thin, unreliable evidence from the Nark II drug test. But allegations of a false conduct reports do not state a claim for deprivation of due process, much less Price's allegations that the test is unreliable. *See Lagerstrom v. Kingston*, 463 F.3d 621, 624–25 (7th Cir. 2006) (false conduct reports do not create due process claim because inmate has ability to litigate truthfulness of report through hearing process).

Price says that Henrichsen placed him in an observation cell for a day "to harass and intimidate" him. *Id.* at 3. But this extremely short stay would usually not be enough to support a claim under either the Due Process Clause or the Eighth Amendment. Price does not explain why the conditions in that cell would serve to intimidate him, or why he knows that Henrichsen placed him there to harass him.

The bulk of Price's allegations are about the process he received in his disciplinary proceeding and his subsequent placement in solitary confinement and then maximum-security status. A prisoner challenging the process afforded in a prison disciplinary proceeding must show that: (1) he has a liberty or property interest with which the state interfered; and (2) the procedures he was afforded to contest that interference were constitutionally deficient. *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989); *Marion v. Columbia Corr. Inst.*, 559 F.3d 693, 697 (7th Cir. 2009). The Supreme Court has explained that a prisoner's cognizable liberty interests "will be generally limited to freedom from restraint which . . . imposes [an] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 483–484 (1995).

Price says that he ultimately served 139 days in solitary confinement and 52 days in a maximum-security cell. But Price does not have a due process right to avoid maximum-security status. *See Whitford v. Boglino*, 63 F.3d 527, 532 (7th Cir. 1995). Regarding his time in solitary

4

confinement, "a liberty interest may arise if the length of segregated confinement is substantial and the record reveals that the conditions of confinement are unusually harsh." *Marion v. Columbia Corr. Inst.*, 559 F.3d 693, 697–98 (7th Cir. 2009). Courts in this circuit have generally concluded that short-term placements of less than six months do not involve a liberty interest. *Hardaway v. Meyerhoff*, 734 F.3d 740, 744 (7th Cir. 2013) (six months and one day insufficient to trigger due process rights); *Marion*, 559 F.3d at 698 ("[S]ix months of segregation is not such an extreme term and, standing alone, would not trigger due process rights.").

If the conditions of Price's segregation were unusually harsh, he might be able to show that he faced an atypical and significant hardship in his placement. But his current allegations do not make that showing. Price adds that he was celled with an unhygienic prisoner for a month and that he was forced to wear clothes smelling of urine. But he does not explain how these two problems fit into his post-disciplinary confinement. Is he saying that he was celled with an unhygienic prisoner during his disciplinary punishment? If so, then it would seem that he was not in *solitary* confinement, and it is unclear what other conditions of confinement he faced during those 139 days.

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief." Under Rule 8(d), "each allegation must be simple, concise, and direct." The primary purpose of these rules is fair notice. A complaint "must be presented with intelligibility sufficient for a court or opposing party to understand whether a valid claim is alleged and if so what it is." *Vicom, Inc. v. Harbridge Merchant Serv's, Inc.*, 20 F.3d 771, 775 (7th Cir. 1994). I conclude that Price's allegations do not meet these standards with regard to his allegations about Henrichsen's decision to place him in observation or about the conditions of his confinement after he was convicted.

5

I will dismiss Price's current complaint and I will give him a short time to submit an amended complaint that complies with these rules. He should draft his amended complaint as if he were telling a story to people who know nothing about his situation. In particular, he should explain why he thinks that Henrichsen's decision to place him in observation violated his rights, and he should detail the conditions of his segregation cell at CCI.

Price has also filed a motion for appointment of counsel. Dkt. 3. But litigants in civil cases do not have a constitutional right to counsel, and I do not have the authority to appoint counsel to represent a pro se plaintiff in a civil matter. Rather, I can only assist in recruiting counsel who may be willing to serve voluntarily. *See* 28 U.S.C. § 1915(e)(1); *Pruitt v. Mote*, 503 F.3d 647, 654, 656 (7th Cir. 2007) (en banc).

To show that it is appropriate for the court to recruit counsel, a plaintiff must first show that he has made reasonable efforts to locate an attorney on his own. *See Jackson v. Cnty. of McLean*, 953 F.2d 1070, 1072–73 (7th Cir. 1992) ("the district judge must first determine if the indigent has made reasonable efforts to retain counsel and was unsuccessful or that the indigent was effectively precluded from making such efforts"). To meet this threshold requirement, this court generally requires plaintiffs to submit correspondence from at least three attorneys to whom they have written and who have refused to take the case. Price has met this requirement.

The court will seek to recruit counsel for a pro se litigant only when the litigant demonstrates that his case is one of those relatively few in which it appears from the record that the legal and factual difficulty of the case exceeds his ability to prosecute it. *Pruitt*, 503 F.3d at 654–55. The court must decide for each case "whether this particular prisoner-plaintiff, among many deserving and not-so-deserving others, should be the beneficiary of the limited

6

resources of lawyers willing to respond to courts' requests." *McCaa v. Hamilton*, 893 F.3d 1027, 1036 (7th Cir. 2018) (Hamilton, J., concurring). At this point, it is far too early to consider Price's request. He does not need the assistance of counsel to further explain the basis for his claims. So I will deny Price's motion without prejudice to him renewing it later in the case.

ORDER

IT IS ORDERED that:

1. Plaintiff Mark H. Price's complaint, Dkt. 1, is DISMISSED for failure to comply with Federal Rule of Procedure 8.

2. Plaintiff's motion for the court's assistance in recruiting him counsel, Dkt. 3, is DENIED without prejudice.

3. Plaintiff may have until April 30, 2019, to submit an amended complaint.

Entered April 9, 2019.

BY THE COURT:

/s/
_____
JAMES D. PETERSON
District Judge